Dear Honorable Sharon Grosfeld
You have asked for our opinion about the legality of a physician's passing on the cost of malpractice insurance to a patient who is a member of a health maintenance organization ("HMO") by assessing a special charge for that purpose.
In our opinion, such a charge violates the State HMO law's prohibition against balance billing of HMO members.
 I Background
You provided copies of several bills apparently issued by a medical practice.[1] The body of what appears to be the initial bill, dated September 13, 2004, lists a charge in the amount of $25 entitled "Malpractice ser char," indicates that the patient's HMO has not paid that charge, and states "Please PAY this amount." A further legend in the body of the bill states: "Your doctor is asking for your help of $25 for the high, rising cost of malpractice insurance. Thank you." At the bottom of the page is a statement that $25 is "DUE FROM PATIENT" and the further advice that this payment is due upon receipt of the bill. Similar language appears on copies of subsequent billing statements that list the $25 charge as unpaid "over 30 days."[2]
 II Analysis
A. Balance Billing Prohibition in State HMO Law
The State HMO law sets forth the statutory basis for the concept of the HMO, under which a member pays a periodic fee to the HMO in return for the HMO's promise to provide or finance health care services for the member without further charge, except for co-payments or deductibles set forth in the HMO plan. See Riemer v. Columbia Medical Plan, Inc., 358 Md. 222, 228-31,747 A.2d 677 (2000); Annotated Code of Maryland, Health-General Article ("HG"), § 19-701 et seq. A key component of this arrangement is the "hold harmless" clause that appears in any agreement between an HMO and a provider. In particular, the HMO law requires that:
The hold harmless clause shall provide that the provider may not, under any circumstances, including nonpayment of moneys due the providers by the [HMO], insolvency of the [HMO], or breach of the provider contract, bill, charge, collect a deposit, seek compensation, remuneration or reimbursement from, or have any recourse against the [HMO] member ... for services provided in accordance with the provider contract. HG § 19-710(i)(2) (emphasis added). Copayments, coinsurance, and charges for services not included in the HMO plan may be excluded from this contractual prohibition. HG § 19-710(i)(3).
The statute buttresses this contractual provision by prohibiting health care providers from charging members of an HMO for a "covered service" provided to the member.[3] In particular, the State HMO law provides:
 (1) Except [for certain copayments and coinsurance], individual enrollees and subscribers of [HMOs] ... shall not be liable to any health care provider for any covered services provided to the enrollee or subscriber.
 (2)(i) A health care provider ... may not collect or attempt to collect from any subscriber or enrollee any money owed to the health care provider by [an HMO] ....
 (ii) A health care provider ... may not maintain any action against any subscriber or enrollee to collect or attempt to collect any money owed to the health care provider by [an HMO] ....
HG § 19-710(p). Essentially, a "covered service" is a "health care service included in the benefit package of the [HMO]...." HG § 19-701(d).[4] Thus, "subscribers or members owe no debt to any health care provider (i.e., any doctor, hospital, etc.) for any covered services." Riemer, 358 Md. at 244.[5] An HMO member remains liable for copayments and coinsurance as provided in the HMO plan, as well as for any services not covered by the HMO plan. HG § 19-710(p)(3).[6]
The prohibition against balance billing for covered services applies whether or not the provider is under contract with the HMO; the existence or lack of a contractual relationship simply determines the amount of the compensation due from the HMO to the provider. See 88 Opinions of the Attorney General ___(2003) [Opinion No. 03-005 (March 13, 2003)], slip op. at pp. 2-4.
B. Malpractice Insurance Surcharge
The medical bills that you have provided include a charge that purportedly relates to the billing physician's expenses for malpractice insurance. Malpractice insurance is, of course, one element of the overhead involved in operating a medical practice. These expenses are typically encompassed within the professional service charges of the provider. In this instance, the physician has apparently added a charge for that element of overhead in addition to the charges for health care services.
The HMO law makes no allowance for a health care provider to charge an HMO member a "malpractice insurance surcharge" in connection with the provision of health care services.[7] The patient has no other obligation by law or contract to pay directly for an element of the provider's overhead expenses. See Patel v. HealthPlus, Inc., 112 Md. App. 251, 266, 684 A.2d 904 (1996). Such a charge is essentially an effort to increase the provider's compensation for medical services provided to the patient beyond the amount provided in the HMO contract. If such a charge were permissible, a provider could easily circumvent the balance billing prohibition in the HMO law by identifying additional charges as related to various overhead expenses. If permitted, this practice would undermine a basic premise of the HMO concept. Cf. HG § 19-701(g) (defining HMO as entity that provides health care services to members "only on a predetermined periodic rate basis", except for copayments and deductibles).
Thus, in our opinion, a "surcharge" for malpractice insurance assessed against an HMO member would amount to an effort to balance bill in violation of the HMO law. Moreover, because the provider is seeking recourse against the patient, it would contravene the "hold harmless" clause that appears in the provider's contract with the HMO. The same result would pertain to any attempt to separate out some element of the provider's overhead expenses — whether it be insurance, the utility bill for office space, the laundry bill for lab coats — and assess the patient for that portion of the provider's business expenses.[8]
 III Conclusion
In our opinion, a health care provider who assesses a "malpractice insurance surcharge" against patients who are HMO members would violate the prohibition in the State HMO law against balance billing of HMO members.
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] Information that would identify the patient(s) and physician(s) involved was redacted from these copies.
[2] Although the legend in the body of the bill might be interpreted as a request for a voluntary contribution to the physician by the patient, the first billing statement treats the $25 amount as a fee that is to be paid by the patient and the second lists it as an amount that is overdue. Our analysis does not depend on the precise characterization of a charge assessed against a patient, or the manner in which it is communicated, so long as it is not a copayment or deductible described in the HMO plan. See footnote 7 below.
[3] The history of the balance billing prohibition has been elaborated in several prior opinions of this Office. 83 Opinions of the Attorney General 128, 129-35 (1998); 85 Opinions of the Attorney General ___ (2000) [Opinion No. 00-030 (November 21, 2000); 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-005 (March 13, 2003)]; 89 Opinions of the Attorney General 53 (2004).
[4] The statute provides:
 (d) "Covered service" means a health care service included in the benefit package of the health maintenance organization and rendered to a member or subscriber of the health maintenance organization by:
 (1) A provider under contract with the health maintenance organization, when the service is obtained in accordance with the terms of the benefit contract of the member or subscriber; or
 (2) A noncontracting provider under § 19-710.1 of this subtitle, when the service is:
 (i) Obtained in accordance with the terms of the benefit contract of the member or subscriber;
 (ii) Obtained pursuant to a verbal or written referral by:
 1. The health maintenance organization of the member or subscriber; or
 2. A provider under written contract with the health maintenance organization of the member or subscriber; or
 (iii) Preauthorized or otherwise approved either verbally or in writing by:
 1. T h e h e a l t h maintenance organization of the member or subscriber; or
 2. A provider under written contract with the health maintenance organization of the member or subscriber.
HG § 19-701(d) (emphasis added). "Health care services" mean "services, medical equipment, and supplies that are provided by a provider." HG § 19-701(f)(1).
[5] An HMO member may enter into a private contract with a provider that does not involve the HMO, either in terms of the patient's access to the provider or payment of the provider. See 85 Opinions of the Attorney General ___ (2000) [Opinion No. 00-030 (November 21, 2000)].
[6] If the patient is covered by Medicare, the provider may bill the patient for copayments as permitted by Medicare regulations. HG § 19-710(p)(3)(ii). Also, in a point-of-service plan, the subscriber may be liable for additional fees if services are received from an out-of-network provider. See HG § 19-710.2.
[7] We assume that the surcharge is not a copayment identified in the HMO plan. In any event, a surcharge that is not linked to any particular service would be contrary to the regulations governing HMO plans. See COMAR 31.12.01.13A(1) (plan may allow for "[r]easonable deductibles and copayments ... for the provision of specific services").
[8] This billing practice may also violate other provisions of State law. See, e.g., Annotated Code of Maryland, Commercial Law Article, §§ 13-301
(unfair and deceptive trade practices), 14-202 (prohibited consumer debt collection practices). *Page 35